567 A.2d 1110

**BRISTOL TOWNSHIP WATER AUTHORITY, Appellant,**

**v.**

**LOWER BUCKS COUNTY JOINT MUNICIPAL AUTHORITY, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 1989.

Decided Dec. 20, 1989.

242

Donald B. McCoy, Newtown, for appellant.

Miriam Reimel, Bristol, for appellee.

Before DOYLE and McGINLEY, JJ., and NARICK, Senior Judge.

McGINLEY, Judge.

Bristol Township Water Authority (BTWA) appeals from an order of the Chancellor of the Court of Common Pleas of Bucks County (common pleas court) denying BTWA's post-trial motions and entering a final decree permanently enjoining BTWA from extending its water service into a narrowly defined service area within Bristol Township already serviced by appellee Lower Bucks County Joint Municipal Authority (Lower Bucks).

Lower Bucks, a public water and sewer authority, was organized in 1952 under the Municipality Authorities Act of 1945 (Act), Act of May 2, 1945, P.L. 382, 53 P.S. §§ 301–322, jointly by Bristol Township and the Borough of Tullytown. Lower Bucks operates its own water supply system and provides water and sewer services in Tullytown Borough and portions of the townships of Bristol, Middletown and Falls in Bucks County. BTWA, also a municipal water authority organized pursuant to the Act, was incorporated on June 6, 1986.

Since 1961, Lower Bucks has provided water service to three areas of Bristol Township. The provision of this service is the subject of this dispute. The properties involved are known as the Keystone Garden Apartments, a 617 unit apartment complex; a shopping center known as Bristol Plaza; and a housing subdivision known as Tanglewood, in Middletown Township north of Bristol Plaza.

In September 1987, BTWA Solicitor Donald B. McCoy met and spoke with certain principals of Keystone Garden Apartments for the purpose of soliciting the apartments' water business for BTWA. Also, the Bristol Township Council had mandated that as a condition for final approval of the shopping center at Bristol Plaza, the owners or users must purchase water and water service from BTWA and

obtain public water connection permits through that authority. Further, under the direction of Bristol Township, BTWA is prepared to and intends to take all actions necessary to serve the Bristol Plaza Shopping Center.

However, Lower Bucks has provided water service to these areas since 1961 and there has never been a complaint filed by any of the involved customers pursuant to the Act questioning either rates or service. Over the years that Lower Bucks has served Bristol Plaza and Keystone Gardens, Lower Bucks has maintained the water lines, kept them clean, repaired breaks where necessary, maintained and repaired the hydrants and done all other work necessary to keep the lines in operating condition.

On December 17, 1987, Lower Bucks filed a complaint in equity in the common pleas court seeking to enjoin BTWA under Section 4 A(b)(2) of the Act, 53 P.S. § 306 A(b)(2) from interfering with or duplicating water service in the disputed area already served by Lower Bucks.

After a June 6, 1988, hearing, which upon agreement of both parties, the common pleas court treated as a final hearing rather than a hearing on a preliminary injunction, the common pleas court enjoined BTWA from extending its water service into the narrowly defined service area (Keystone Garden Apartments, Bristol Plaza, and Tanglewood) already served by Lower Bucks.

Both BTWA and Lower Bucks filed motions for post-trial relief. The common pleas court subsequently denied both post-trial motions. BTWA appeals.

BTWA presents seven issues for our review. BTWA contends: that the Chancellor erred in granting injunctive relief where Lower Bucks had produced no evidence of its ownership of the water lines, thereby erroneously shifting the burden of disproving ownership to BTWA; that the Chancellor erred in not finding Bristol Township to be an indispensable party; that the Chancellor erred in determining that municipal authorities were "competing enterprises" under Section 4A(b)(2) of the Act; that the Chancellor erred

in determining that Section 4A of the Act and Bristol Township Ordinance No. 18 apply to the present case; that the Chancellor erred in defining a water service area encompassing portions of two townships in an equity proceeding; that the Chancellor should have recused himself; and that the Chancellor erred in granting final injunctive relief in that Lower Bucks has failed to meet the prerequisites for injunctive relief.

█ Our scope of review in equity matters is limited to determining whether the trial court committed error of law or abused its discretion. Moreover, the equity court's decision will stand where there is sufficient evidence to support the Chancellor's findings and reasonable inferences and conclusions which may be derived therefrom. *Greenacres Apartments Inc. v. Bristol Township*, 85 Pa.Commonwealth Ct. 572, 482 A.2d 1356 (1984).

BTWA's first contention is that the Chancellor erred in granting injunctive relief in that Lower Bucks had produced no evidence of its ownership of the water lines. Thus, BTWA contends the common pleas court erroneously shifted the burden of disproving ownership onto BTWA.

█ However, nothing in the Act requires that the authority own the water lines in order for the Act to apply. Section 4 A(a)(10) of the Act states:

(a) The Authority shall be for the purpose of acquiring, holding, constructing, financing, improving, maintaining and operating, owning, leasing, either in the capacity of lessor or lessee, projects of the following kind and character.

.    .    .    .    .

(10) waterworks, water supply works, water distribution systems;

Clearly, the Act applies to authorities which maintain and operate water distribution systems as well as those authorities which own their own waterworks. Lower Bucks has maintained and operated the water distribution system in the disputed area since 1961. This is sufficient to render

the Act applicable. As correctly noted by the Chancellor, neither party introduced any competent evidence of ownership of the particular lines. The Chancellor's decision was based upon the fact of Lower Bucks' service for more than 25 years.

■ Second, BTWA contends that the Chancellor erred in not finding Bristol Township to be an indispensable party. In *E–Z Parks Inc. v. Philadelphia Parking Authority,* 103 Pa.Commonwealth Ct. 627, 521 A.2d 71 (1987) this Court adopted the test established by our state Supreme Court in *Merchanicsburg Area School District v. Kline,* 494 Pa. 476, 431 A.2d 953 (1981) for determining whether a party is indispensable to the action. In *E–Z Parks,* this Court stated:

> The general rule is that '[a] party [in an equity action] is indispensable when he has such an interest that a final decree cannot be made without affecting it, or leaving the controversy in such a condition that a final determination may be wholly inconsistent with equity and good conscience. That is to say his presence as a party is indispensable where his rights are so connected with the claims of the litigants that no decree can be made between them without impairing such rights.' *Hartley v. Langkamp,* 243 Pa. 550, 555–556, 90 A.402, 403–404 (1914) (quoting 16 Cyc 189). And the failure to join an indispensable party deprives the court of jurisdiction. *Powell v. Shepard,* 381 Pa. 405, 113 A.2d 261 (1955). See also *Reifsnyder v. Pittsburgh Outdoor Advertising Co.,* 396 Pa. 320, 152 A.2d 894 (1959). In determining whether a party is indispensable to the action, we are guided by the following criteria enunciated by our Supreme Court in *Merchanicsburg Area School District v. Kline,* 494 Pa. 476, 431 A.2d 953 (1981):
>
> 1. Do absent parties have a right or interest related to the claim?
> 2. If so, what is the nature of the right or interest?
> 3. Is that right or interest essential to the merits of the issue?

4. Can justice be afforded without violating due process rights of absent parties?

*E–Z Parks*, 103 Pa.Commonwealth Ct. at 631–632, 521 A.2d at 73.

In applying the *Mechanicsburg* test to the present facts, we conclude that Bristol Township is not an indispensable party. First, as the Chancellor correctly noted, Bristol Township Ordinance 3–86, enacted May 14, 1986, established BTWA, but did not provide for BTWA's service area to include Keystone Garden Apartments, Bristol Plaza or Tanglewood. As noted above, Lower Bucks has maintained and operated the existing water distribution system to this area since 1961. This is sufficient to bring this controversy under Section 4 A(b)(2) of the Act. Both Lower Bucks and BTWA are authorities organized and incorporated pursuant to the Act. It is well settled that an authority incorporated pursuant to the Act is the agent of the Commonwealth and not the child of the incorporating municipality. *Upper Gwynedd Township Authority v. Roth*, 113 Pa.Commonwealth Ct. 239, 242, 536 A.2d 875, 878 (1988); *Whitemarsh Township Authority v. Elwert*, 413 Pa. 329, 333, 196 A.2d 843, 847 (1964). As a result, Lower Bucks and BTWA are Commonwealth agencies not subject to control by Bristol Township. Accordingly, Bristol Township had no right or interest essential to the merits of the issue of whether BTWA violated Section 4 A(b)(2) of the Act. Thus, Bristol Township's due process rights were not violated.

■ BTWA's third contention is that the Chancellor erred in determining that Lower Bucks and BTWA, both municipal authorities, were "competing enterprises" under Section 4 A(b)(2) of the Act.[1] BTWA contends that the Act only

1. Section 4 A(b)(2) of the Act provides:

    The purpose and intent of this act being to benefit the people of the Commonwealth by, among other things, increasing their commerce, health, safety and prosperity, and not to unnecessarily burden or interfere with existing business by the establishment of competitive enterprises, none of the powers granted by this act shall be exercised in the construction, financing, improvement, maintenance, extension or operation of any project or projects which in

applies to "for-profit" business enterprises and that neither Lower Bucks nor BTWA is a private "for-profit" company.

BTWA's interpretation of Section 4 A(b)(2) is erroneous. In *Northampton v. Bucks County Water and Sewer Authority*, 96 Pa.Commonwealth Ct. 514, 508 A.2d 605 (1986) this Court applied Section 4 A(b)(2) of the Act to two municipal authorities in Bucks County. There is no requirement that the competing enterprises be "for-profit" businesses.

■ BTWA's fourth contention is that the Chancellor erred in determining that Section 4 A of the Act and Bristol Township Ordinance No. 18 (1952 ordinance incorporating Lower Bucks as an authority) control this controversy. Apparently, BTWA argues that Bristol Township reserved the right to determine who will provide water service within the township. However, as noted above, an authority which has been incorporated under the Act becomes an independent Commonwealth agency not subject to the control of the incorporating township. *Whitemarsh Township.* As a result, upon the enactment of Ordinance No. 18 in 1952, Lower Bucks became an independent agency not subject to the control of Bristol Township. The township retained no right of control over Lower Bucks' operation of its water distribution system.

■ BTWA's fifth contention is that the Chancellor erred in defining in an equity proceeding a water service area for Lower Bucks consisting of portions of both Bristol Township and Middletown Township. BTWA contends that when the creation of a water service area encompasses two municipalities only the Pennsylvania Public Utility Commission has jurisdiction.

BTWA's contention that the Chancellor defined or created a water service area for Lower Bucks is erroneous. Lower Bucks was incorporated in 1952 by ordinances of Bristol

whole or in part shall duplicate or compete with existing enterprises serving substantially the same purposes. This limitation shall not apply to the exercise of the powers granted hereunder.

Township and Tullytown Borough to serve those municipalities and "for such other territory as it may be authorized to serve." Section 6, Bristol Township Ordinance No. 18 (1952). In 1961, Lower Bucks expanded into the present area providing water service to Keystone Garden Apartments, and Bristol Plaza in Bristol Township and Tanglewood subdivision in Middletown Township. Lower Bucks has operated and maintained the ten-inch water lines in that area since 1961. Accordingly, the Chancellor has not created a new water service area, but merely made a finding of fact as to the area Lower Bucks services. Thus, the Chancellor has not exceeded his equity powers.

■ BTWA's sixth contention is that the Chancellor should have recused himself because Attorney William Carlin, a partner in the Chancellor's former law firm, had participated in discovery proceedings in another case between the parties and had served as bond counsel for BTWA. The Chancellor raised this issue on his own motion and informed both parties that he had left his former law firm in November 1977 upon assuming the common pleas court.

The record indicates that several times during the hearing the Chancellor asked counsel for both parties if they perceived any conflict of interest on the part of the Chancellor. Counsel for BTWA replied "I have no position as to whether your Honor hears the case or not." (Notes of Testimony, July 6, 1988 (N.T.) at 8.) At a further point in the hearing, during the presentation of evidence, the Chancellor again questioned counsel for both parties as to whether he should disqualify himself. At this point, counsel for BTWA stated that he knew of no conflict which would require the Chancellor to recuse himself. (N.T. at 73–75.) Our state Supreme Court in its decision in the consolidated cases of *Goodheart v. Casey* and *Catania v. State Employees Retirement Board*, 523 Pa. 188, 565 A.2d 757 (1989) stated that a party who fails to object before the judge when the asserted impediment or alleged conflict of interest is known waives the right to raise the issue as a basis for invalidating

the judgment. *Goodheart*, 565 A.2d at 763. In *Goodheart* the Supreme Court stated:

> Under our law, a strong tradition has been established which recognizes that each judge has the primary responsibility for determining the validity of a challenge to his or her participation in a given matter. *Commonwealth v. Hammer*, 508 Pa. 88, 494 A.2d 1054 (1985); see also, *Commonwealth v. Cherpes*, 360 Pa.Super. 246, 520 A.2d 439, appeal denied, 515 Pa. 612, 530 A.2d 866 (1987); *Crawford's Estate, supra* [307 Pa. 102, 160 A. 585]; Code of Judicial Conduct, Canon 3C.
>
> This view rests upon the sound premise that the jurist requested to recuse himself is the most capable to determine those factors hidden in the recesses of the mind and soul which would bear upon his or her capability to maintain the impartiality that each matter must receive. That exercise of conscience was intended to be aided by Canon 3(C) which provides some of the factors bearing upon such an evaluation. The decision of that judge is final, subject to review only for an abuse of that discretion.

*Goodheart*, 565 A.2d at 763. The Chancellor addressed the issue of his prior affiliation and there was no objection. We conclude that the Chancellor did not err in failing to recuse himself.

BTWA's seventh contention is that the Chancellor erred in granting final injunctive relief to Lower Bucks where Lower Bucks failed to meet the requirements for injunctive relief. Where statutory authorities do an illegal act, or one which they have no authority to perform, equity will grant relief. *Mazeika v. American Oil Company*, 383 Pa. 191, 194, 118 A.2d 142, 143 (1955). The Chancellor found that BTWA was attempting to provide water service to an area already adequately serviced by Lower Bucks. The Chancellor correctly concluded that BTWA's attempt to provide water service in an area already serviced by Lower Bucks, constituted a violation of Section 4 A(b)(2) of the Act. We affirm the order of the Chancellor.

## ORDER

AND NOW, this 20th day of December, 1989, the order of the Chancellor of the Court of Common Pleas of Bucks County in the above-captioned proceedings is hereby affirmed.