**Roscoe SMITH and Rosalyn Smith, his wife, Appellants,**

v.

**ATHENS TOWNSHIP AUTHORITY.**

**Barry SCHOENLY and Diane Schoenly, his wife, d/b/a Blue Spruce Trailer Park and John J. Desisti and Nancy Desisti, his wife, d/b/a Desisti Trailer Court, Appellants,**

v.

**ATHENS TOWNSHIP AUTHORITY.**

Commonwealth Court of Pennsylvania.

Argued April 16, 1996.

Decided Nov. 27, 1996.

Gerald A. Kinchy, Sayre, for Appellants.

John Kocsis, Athens, for Appellee.

Before McGINLEY and FLAHERTY, JJ., and SILVESTRI, Senior Judge.

FLAHERTY, Judge.

In this consolidated appeal, Roscoe and Rosalyn Smith (Smith), Barry and Diane Schoenly (Schoenly), and John and Nancy DeSisti (DeSisti), collectively Appellants, appeal from an order of the Court of Common Pleas of Bradford County which determined that Ordinance No. 69, adopted by the Athens Township Supervisors (Supervisors) on August 10, 1989, which purported to establish a tap-in fee for the municipal sewer system at a cost of $600 for "each property upon which a residence shall be located," and $1600 for each commercial property, was invalid and that the resolution of the Athens Township Authority (Authority)[1] dated July

---

1. It is not disputed that the Athens Township Authority was created by Athens Township Supervisors in 1987 (R.R. at 261a.), and was orga- nized under the Municipality Authorities Act of 1945(Act), Act of May 2, 1945, P.L. 382, as amended, 53 P.S. §§ 301–322.

26, 1989,[2] which established a tap-in fee of $600 for "each residence," controlled over the minutes of the July 26, 1989, Authority meeting and correctly set forth the cost of sewer connection fees.

The issues in this case are: (1) whether the trial court erred in denying Appellants' motion to amend their complaint to include constitutional issues after the close of testimony, (2) whether Ordinance No. 69 passed by the Supervisors, or the resolution adopted by the Authority governs tap-in fees, (3) whether a trailer park and an apartment building constitute commercial properties rather than residences, and (4) whether the tap-in fees are reasonable and uniform.

The Schoenlys and the DeSistis each own and operate separate trailer parks on Elmira Street in Athens Township. The Smiths own and operate an apartment complex on the same street.

In 1989, a municipal sewer was installed on Elmira Street. The DeSistis and Schoenlys excavated and constructed sewer lines within their trailer parks in order to service each of the trailer lots and expended $47,000 and $72,600 respectively. On September 16, 1989, the Schoenlys and DeSistis submitted applications to the Authority for tap-in permits and each tendered $600. The Authority denied the applications, informing the DeSistis that, to tap into the sewer line, they were required to pay $22,000, and informing the Schoenlys that they were required to pay $31,200 to tap into the sewer line. These fees represented a $600 tap-in charge for each of the units within the DeSisti's and Schoenly's trailer parks.

On October 11, 1990, the Schoenlys and DeSistis filed a suit against the Authority

seeking to compel them to accept $600 or $1,600 as full payment for the tap-in fee. On October 16, 1990, the Authority filed an action against the Smiths seeking to require them to connect to the municipal sewage system and demanding a total of $23,400, which represented a tap-in fee of $600 for each of the apartments within their complex. One week later, on October 23, 1990, the Authority enacted a resolution ratifying and confirming the resolution dated July 26, 1989, reciting that questions had been raised because it was not signed nor physically attached to the minute book, and it was allegedly ambiguous. (R.R. at 236a–237a.) The Smiths filed suit against the Authority on January 31, 1991. The Schoenly, DeSisti and Smith proceedings were then consolidated for trial, which commenced on November 23, 1991. (R.R. at 2a.)

At the hearing, Appellants argued that Ordinance No. 69 enacted August 10, 1989, by the Supervisors established the tap-in fees because it was in effect at the time they applied for their tap-in permits.[3] Ordinance No. 69 provides, in relevant part, that "each property upon which a residence shall be located" shall pay a tap-in fee of $600. Additionally, "each property on which a commercial or industrial facility shall be located" shall pay a tap-in fee of $1,600. In accordance with Ordinance No. 69, Appellants argued that they are required to pay only $600 to tap their properties into the sewer system. In the alternative, Appellants argued that, at most, they are required to pay $1,600 if their properties are deemed a commercial or industrial facility.

The Authority argued, and the trial court agreed, that Ordinance No. 69 is not valid and does not control tap-in fees.[4] The Su-

---

2. Although the trial court in its opinion refers to the July 13, 1989 resolution, it appears that the court was referring to the July 26, 1989, resolution as no meeting occurred on the thirteenth, nor was a resolution approved on that date. The parties stipulated that although the resolution bore the date of July, 13, 1989, that date was subsequently crossed out and replaced with (July "26.") The change was made by Attorney Kocsis, counsel for the Authority. (R.R. at 213a.) Appellants acknowledge that July 26 is the correct date of the resolution (Appellant's brief at 19), but contend that the resolution was not properly enacted.

3. Only the Schoenlys and the DeSistis applied for tap-in permits on September 16, 1989. However, Appellants maintain that Ordinance No. 69 was in effect on October 16, 1990, when the Authority filed a civil action against the Smiths requiring them to connect to the sewage system.

4. We also note that the trial court in its opinion stated that "Ordinance 69 was deemed invalid by this court in an order dated March 6, 1991." (Trial court opinion dated March 30, 1995, at 5.) However, the March 6, 1991 order contained in the original record does not contain any such language. In that order, the court struck "Count

pervisors who enacted Ordinance No. 69 purporting to establish these fees did not have the authority to do so. The court determined that, in accordance with the Act, the Authority has the exclusive power to regulate sewer rates and tap-in fees. As such, the trial court held that the Authority's resolution of July 26, 1989, which was ultimately ratified on October 23, 1990, properly established the tap-in fees. In accordance with that resolution, a tap-in fee of $600 is required for "each residence". Commercial or industrial properties are required to pay a tap-in fee of $1,600. Moreover, the court determined that the October 23, 1990 resolution, which also defined residence to include mobilehomes, was not an ex post facto law but merely ratified the previous resolution of July 26, 1989. In addition, if the resolution of July 26, 1989 was not properly enacted, the trial court determined that the resolution of October 23, 1990, was applicable to Appellants retrospectively.

Accordingly, the trial court determined that Appellants were required to pay a $600 tap-in fee for each residence on their property. The trial court also denied Appellants' motion to amend their complaint at the conclusion of trial to include constitutional issues. Appellant filed post-trial motions which were denied by the court.[5] This appeal followed.

■ The burden is upon the challenging party to prove that the Authority abused its discretion by establishing a rate system which was either unreasonable or lacking in uniformity. The court must consider whether the factual findings are supported by substantial evidence and whether the law was properly applied to the facts. *West v. Hampton Township Sanitary Authority*, 661 A.2d 459 (Pa.Cmwlth.1995).

■ Initially, Appellants Schoenly and De-Sisti contend that the trial court erred by refusing to grant their motion to amend their complaint for the third time because the

testimony had been concluded, the opposing party would be prejudiced and there was not a reasonable possibility that the proposed amendment would be successful.

■ After the close of testimony, Schoenly and DeSisti sought to include a claim that the imposition of the fees is an unconstitutional taking of private property without just compensation. Pa. R.C.P. No. 1033 provides: "A party, either by filed consent of the adverse party or by leave of court, may at any time ... amend his pleading." Because Appellants did not have the consent of the Authority, they sought leave to amend from the trial court. This court held in *Simmons v. Township of Moon*, 144 Pa.Cmwlth. 198, 601 A.2d 425 (1991), that "leave to amend a complaint is within the sound discretion of the trial court." Moreover, "where amendment is sought after the testimony has been concluded, prejudice will always result to the extent that the opposing party has not contemplated the subject matter of the proposed amendment in the preparation and trial of the case." *Newcomer v. Civil Service Commission*, 100 Pa.Cmwlth. 559, 515 A.2d 108, 111 (1986), *petition for allowance of appeal denied*, 514 Pa. 626, 522 A.2d 51 (1987). We conclude that the trial court did not abuse its discretion in denying the motion to amend the complaint for the third time after the close of testimony to raise constitutional issues.

■ Next, Appellants allege that Ordinance No. 69, which was enacted by the Supervisors on August 10, 1989, and purported to establish a $600 tap-in fee for "each property," is applicable to them because it was in effect at the time they tendered their application and tap-in fees. We disagree.

In accordance with Sections 4(B)(h) and (t) of the Act, 53 P.S. §§ 306(B)(h) and (t), the Authority is vested with the power to set all rates and charges, including tap-in fees nec-

---

I of the second amended complaint and dismisse[d] *Athens Township as a party."*

For purposes of this appeal, with respect to Ordinance 69, this court is only concerned with that portion which purports to establish tap-in fees.

5. On July 26, 1995, the trial court clarified its opinion of March 30, 1995 by correcting certain dates contained therein.

essary for sewer systems. That section provides in pertinent part:

> (B) Every *Authority* is hereby granted, and *shall have* and may exercise *all powers* necessary or convenient for the carrying out of the aforesaid purposes, including but without limiting the generality of the foregoing, the following rights and powers:
>
> . . . .
>
> (h) *To fix, alter, charge and collect rates and other charges* in the area served by its facilities at reasonable and uniform rates *to be determined exclusively by it,* for the purpose of providing for the payment of the expenses of the Authority, the construction, improvement, repair, maintenance and operation of its facilities and properties, and ... the payment of principal and interest on its obligations....
>
> . . . .
>
> (t) *To charge a tapping fee* whenever the owner of any property connects such property with a sewer system or water main constructed by the Authority....

■ In accordance with the above statute,[6] the Authority has "all powers" to establish fees, including tap-in fees, and those fees are "to be determined exclusively by it [Authority]." "[T]he powers of municipal authorities include that of making and collecting rates ... for the construction and maintenance of their facilities." *Duryea Borough Sewer Authority v. McLaughlin,* 74 Pa.Cmwlth. 517, 460 A.2d 402, 404 (1983.) According to the Act, the Authority sets the rates and fees in connection with its sewage system.

■ Moreover, an authority which has been incorporated under the Act becomes an independent agency not subject to the control of the incorporating township. *Bristol Township v. Lower Bucks County,* 130 Pa. Cmwlth. 240, 567 A.2d 1110 (1989). As such, once Township created the Authority and appointed its members, Township no longer retained any control over Authority's operation of its sewer system, *Id.,* even though it retains power of appointment of its members

when vacancies occur. Section 7 of the Act, 53 P.S. § 309.

Inasmuch as the exclusive power to set charges rests with the Authority, the Supervisors did not have any authority to establish tap-in fees, so the Authority's resolution governs. We note that, although Appellants contend that the Supervisors have concurrent authority to regulate and charge sewer tap-in fees in accordance with The Second Class Township Code (Code), Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §§ 65101–67201, Appellants have not cited to any specific section in the Code, nor have we found a section, which purports to establish such power by a township after an authority has become incorporated under the Act.

Next, we will examine the Authority's resolution. The formal written resolution, which has the date of July 13, 1989, struck out and replaced with the date July 26, 1989, states:

> WHEREAS, the Authority made the determination to assess the following charges:
>
> A tap-in fee of Six Hundred ($600.00) Dollars will be *assessed for each residence*
>
> . . . .

The minutes of the July 26, 1989, meeting of the Authority, prepared by the Authority's secretary, Mr. Bok (the secretary), provide in pertinent part:

> The following motion was unanimously approved:
>
> *A tap-in fee of $600.00 will be *charged for residents* ....

Thereafter, the minutes of the July 26, 1989, meeting were "read, corrected and approved" at a subsequent meeting of the Authority on August 3, 1989. (R.R. at 179a.) However, there is nothing in the record indicating what corrections were made. (*Id.*) The secretary testified with regard to the minutes of July 26th:

> At the following meeting on August 3rd, they were ... it said, read corrected and approved, but I can't specify what the corrections were. I guess, not being a profes-

---

**6.** Section 4(B)(t) of the Act was substantially amended by Section 1 of the Act of December 19, 1990, P.L. 1227. The amendment was enacted after the cause of action arose in this case, as such it has no effect on its outcome.

sional secretary, I don't know whether I, in fact, went back and made the corrections, but basically its a simple error. It was residents, instead of residence, with a C E, and had it been with a T S, we would have meant for every individual in the Township and it's obvious that that's a mistake.

(R.R. at 179a.)

Then, on October 23, 1990, another resolution was passed. The October 23 resolution provided that "on July 26, 1989, [Authority] approved a Resolution generally fixing a tap in fee of $600.00 for residential property and certain commercial property and fixing a tap fee of $1,600.00 on any commercial property...." (R.R. at 236a.) It further stated that the "resolution was not placed in the Minute Book and the Minute Book was allegedly ambiguous and mis-spelled a word ..." (*Id.*) As such, the Authority, in its October 23 resolution, ratified and confirmed the July 26, 1989, resolution. In addition, the October 23, 1990, resolution provided:

> Authority formally states by resolution that the tap in fees per residence shall include all mobile homes, modular units, apartment units or any other individual residential units hooked in any way to the sewer line shall be subject to an individual tap fee of $600.00....

(R.R. at 237a.)

Although Appellants argued that the Authority's resolution of October 23, 1990, was an ex post facto law, the trial court determined that it merely ratified the resolution of July 26, 1989,[7] or was a retrospective law. Retrospective laws are reasonable when they do not impair contract rights or vested rights. *Smith v. Fenner,* 399 Pa. 633, 161 A.2d 150 (1960). Because the establishment of tap-in fees was not a valid exercise of the Supervisors' authority and was thus invalid, Appellants acquired no vested rights based on the language in Ordinance No. 69 purporting to establish those fees. As to the July 26 resolution, Appellant's claim that it was "invalid at the time that the Appellants applied for their permits and tendered the fees...." (Appellant's brief at 20). If, as they claim, the resolution was invalid, then there was no authority for either the Authority or the Township to enter into a contract with Appellants and, therefore, they acquired neither contractual nor vested rights.

Next, Appellants contend that, under either Ordinance No. 69 or the Authority's resolution, they are only required to pay $1600 for a tap-in fee. Appellants contend that as an apartment complex and mobile-home park, they are commercial properties rather than residences. The term residence is defined in the October 23, 1990, resolution, which we hold is valid, to include all mobile-homes, modular units, apartment units, or any other individual residential units hooked up in any way to the sewer line. In accordance with the above, Appellants' properties are residences.

Finally, Appellants contend that the tap-in fee is not reasonable or uniform. In accordance with Section 4(B)(h) of the Act, "any person questioning the reasonableness or uniformity of any rate fixed by any Authority ... may bring suit against the Authority." However, the reasonableness of any classification is a matter for administrative discretion. *Patton–Ferguson Joint Authority v. Hawbaker,* 14 Pa.Cmwlth. 402, 322 A.2d 783 (1974). Appellants contend that the rate is not uniform because all other persons beside themselves who are required to tap into the municipal septic system will pay either $600 or $1600. However, other owners of apartments, mobilehome parks, condominiums and townhouses will also be subject to tap-in fees of $600 per unit. As such, the rate is uniform in that each residence is subject to the $600 tap-in fee.

Moreover, even though the tap-in fee is not based on the actual cost of connection, this does not mean that the fee is arbitrary. There is nothing in the Act which prevents the Authority from imposing a tap-in fee as a means of financing construction of the entire sewer system. *Curson v. West Conshohocken Municipal Authority,* 148 Pa.

---

7. The trial court determined that the formal written resolution controlled over the minutes of the July 26, 1989, meeting.

Cmwlth. 386, 611 A.2d 775, 777 (1992). This court has held that such a fee is an appropriate method for securing financing for the project. *Id.*

In this case, we hold that the trial court did not abuse its discretion in refusing to permit Appellants to amend their complaint after the close of testimony. Moreover, in accordance with Authority's resolution, Appellants are required to pay tap-in fees amounting to $600 for every residence, i.e. mobilehome or apartment, contained on their property, which the trial court found to be reasonable and uniform. Accordingly, the decision of the trial court is affirmed.

### ORDER

NOW, November 27, 1996, the order of the Court of Common Pleas of Bradford County dated March 30, 1995 at No. 91 CV 000062 and No. 90 MD 000506 is affirmed.