IN THE COMMONWEALTH COURT OF PENNSYLVANIA

North Fayette County    :
Municipal Authority,    :
    :
    Appellant    :
    : No. 1327 C.D. 2018
    v.    : Argued: May 8, 2019
    :
Municipal Authority of    :
Westmoreland County, and    :
Pennsylvania-American Water    :
Company    :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
    HONORABLE RENÉE COHN JUBELIRER, Judge
    HONORABLE ROBERT SIMPSON, Judge[1]
    HONORABLE PATRICIA A. McCULLOUGH, Judge
    HONORABLE ANNE E. COVEY, Judge
    HONORABLE MICHAEL H. WOJCIK, Judge
    HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK    FILED: January 6, 2020

North Fayette County Municipal Authority (the Authority) appeals from the September 7, 2018 order of the Court of Common Pleas of Fayette County (trial court), sustaining the preliminary objections (POs) filed by the Pennsylvania-American Water Company (PAWC) and the Municipal Authority of

---

[1]This matter was assigned to this panel before September 1, 2019, when Judge Simpson assumed the status of senior judge and was decided before Judge Simpson's service on the Court ended on December 31, 2019.

Westmoreland County (MAWC) and dismissing the Authority's amended complaint with prejudice. We affirm.

**Facts and procedural history**

The Authority was incorporated by the Borough of Dunbar (Borough) in 1955 under the former Municipality Authorities Act of 1945.[2] Fayette County became a member municipality in 1975. The Authority's articles of incorporation reference an ordinance adopted by the Borough, which is not in the record. The articles of incorporation state that the Authority "is formed . . . for the purpose of exercising any and all of the powers conferred by [the former Municipality Authorities Act]." Reproduced Record (R.R.) at 33.

The Authority "provides water service to Dawson Borough, Dunbar Borough, Perryopolis Borough, Smithfield Borough, Vanderbilt Borough, Dunbar Township, Franklin Township, Lower Tyrone Township, and Perry Township." Amended Complaint, R.R. at 4. The Authority also "provides service to *portions* of the City of Uniontown, the City of Connellsville, Connellsville Township, Georges Township, Menallen Township, Nicholson Township, North Union Township, Redstone Township, South Union Township, Springhill Township and Upper Tyrone Township." *Id.* (emphasis in original). The Authority is one of 16 water purveyors within Fayette County. *Id.*

PAWC is a public utility that owns various water lines located within Fayette County. *Id.* PAWC provides water service to portions of municipalities throughout Fayette County, including the cities of Uniontown and Connellsville,

---

[2] Act of May 2, 1945, P.L. 382, *as amended*, *formerly* 53 P.S. §§301-322, repealed by Section 3 of the Act of June 19, 2001, P.L. 287, and continued in the current Municipality Authorities Act, 53 Pa. C.S. §§5601 - 5623.

Connellsville Township, Bullskin Township, Dunbar Township, Menallen Township, North Union Township, and South Union Township.

On May 2, 1985, the Authority and PAWC's predecessor entered into a bulk water supply agreement with a term of 30 years.[3] R.R. at 131-46. At the time, the Authority had been supplying PAWC with a portion of the water supply needs of PAWC's Uniontown District. Under the terms of the 1985 agreement, the Authority was to provide PAWC, and PAWC was to take, an additional supply of water on an as-needed basis. The terms of the agreement required at least 10 years' notice prior to termination by either party. If cancellation notice was not provided, the agreement was to renew automatically for additional 10-year periods.

By letter dated December 3, 2003, the Authority notified PAWC of the Authority's decision to terminate the agreement at its end date, May 2, 2015. R.R. at 147. In a June 20, 2013 response, PAWC offered to renew the 1985 agreement under its existing terms, but no agreement was reached. R.R. at 148.

MAWC's enabling legislation authorizes MAWC to supply water anywhere outside its municipal borders, including Fayette County. On March 11, 2015, PAWC entered into a bulk water purchase agreement with MAWC (the Westmoreland Agreement).[4] R.R. at 151-60. To implement the new agreement, PAWC constructed water facilities to accept water supplies from MAWC.

The Authority filed a complaint on June 13, 2016, and an amended complaint on August 22, 2016, alleging that the agreement between MAWC and

---

[3] The parties have been operating under extensions to that agreement while this matter is pending.

[4] The Westmoreland Agreement has been approved by the Pennsylvania Public Utility Commission under Section 507 of the Public Utility Code, 66 Pa. C.S. §507.

PAWC violates Section 5607(b)(2) of the Municipality Authorities Act (Act), 53 Pa. C.S. §5607(b)(2). In relevant part, Section 5607(b)(2) states:

> The purpose and intent of this chapter being to benefit the people of the Commonwealth by, among other things, increasing their commerce, health, safety and prosperity and not to unnecessarily burden or interfere with existing business by the establishment of competitive enterprises, none of the powers granted by this chapter shall be exercised in the construction, financing, improvement, maintenance, extension or operation of any project or projects or providing financing for insurance reserves which in whole or in part shall duplicate or compete with existing enterprises serving substantially the same purposes.

53 Pa. C.S. §5607(b)(2). In the amended complaint, the Authority alleged that Section 5607(b) of the Act precludes municipal authorities from competing with each other. The Authority further alleged that the construction of water facilities by PAWC and MAWC competes with and duplicates the Authority's existing infrastructure through which the Authority "can and does supply water to PAWC for resale or redistribution to PAWC's Uniontown District," and thus serves substantially the same purpose as the Authority's existing enterprise, operation, supply, or service. R.R. at 8.

Count I of the amended complaint, lodged only against MAWC, requests the trial court to enjoin MAWC from implementing the Westmoreland Agreement, asserting in part that allowing PAWC to purchase bulk water from MAWC would violate Section 5607(b)(2) of the Act and would cause the Authority irreparable harm. Count II of the amended complaint alleges civil conspiracy against both PAWC and MAWC. Count III seeks a declaratory judgment that the Westmoreland Agreement violates the non-competition or non-

duplication of service provisions of the Act and is therefore void and unenforceable.

PAWC filed POs requesting dismissal of the amended complaint for failure to state a claim against PAWC, either for a violation of the non-competition provision of the Act or for civil conspiracy. R.R. at 161-79. Specifically, PAWC asserted that the Act does not apply to public utilities; the Act does not prohibit competition between municipal authorities; and, even if the Act does apply to competing municipal authorities, MAWC has a right to provide water services to PAWC in Fayette County without violating the Act.[5]

MAWC filed POs similarly asserting that the amended complaint should be dismissed for failure to state a claim because no violation of the Act had occurred. MAWC asserted that PAWC and MAWC have contracted for water supply for the Uniontown District and surrounding areas for the past 25 years.[6] MAWC further asserted that the purpose of Section 5607(b)(2) is to prohibit competition between municipal authorities and private enterprises.[7]

Relying on *Dominion Products and Services, Inc. v. Pittsburgh Water and Sewer Authority*, 44 A.3d 697, 704 (Pa. Cmwlth. 2011), and *Beaver Falls Municipal Authority v. Municipal Authority of the Borough of Conway*, 689 A.2d

[5] PAWC also alleged that Count II fails to allege an underlying tort as required to state a claim for civil conspiracy.

[6] The Authority disputes that contention and alleges that, prior to March 11, 2015, MAWC did not supply water to PAWC for resale or distribution to the Uniontown District. Authority's brief at 10; Amended Complaint, R.R. at 6. Whether MAWC previously served any part of PAWC's Uniontown District is not material to our disposition.

[7] The POs also averred that: the civil conspiracy claims should be dismissed for legal insufficiency because there is no proof of malice; and venue is improper because the principal places of business for both PAWC and MAWC are outside Fayette County.

5

379, 381 (Pa. Cmwlth. 1997) *(Beaver Falls)*, the trial court observed that the purpose of Section 5607(b)(2) is to prohibit competition between authorities and private business due to the competitive advantage an authority has over a private enterprise. The trial court noted that the plain language of the statute applies to "existing business." 53 Pa. C.S. §5607(b)(2). Ultimately, the trial court concluded that the Act does not preclude municipal authorities from competing with other municipal authorities. "The duplication of services by more than one authority is not 'competition' prohibited by the [Act]."[8] Trial court op. at 6.

The trial court explained that if the Authority were to prevail, the result would bind PAWC to continue doing business with the Authority *ad infinitum*, to the exclusion of any other provider. The court stated that such a result would be contrary to public policy, and contrary to the Authority's actions in giving notice that it would not renew the Agreement.

The trial court concluded that the amended complaint failed to allege facts demonstrating that the Westmoreland Agreement violated the Act. Because Counts II (conspiracy) and III (declaratory judgment) of the amended complaint were predicated on that assertion, the trial court concluded that they also failed to state a claim upon which relief could be granted. Accordingly, the trial court sustained the POs and dismissed the amended complaint with prejudice.

---

[8] Citing *Beaver Falls*, the trial court added that the statute prohibits the establishment of duplicative *projects*, but not duplication of *services*. In *Beaver Falls*, we noted that the common pleas court had interpreted the Act as prohibiting the creation of municipal authorities to compete with existing enterprises. 689 A.2d at 382 n.4. We agreed with the appellant authority that the Act "prohibits the establishment of duplicative or competitive *projects*, rather than municipal authorities." *Id.* (emphasis in original). However, the trial court misinterpreted the relevant language in *Beaver Falls* in applying it to this case.

6

**Discussion**[9]

Relying on *Lower Bucks County Joint Municipal Authority v. Bristol Township Water Authority*, 586 A.2d 512 (Pa. Cmwlth. 1991) (*Lower Bucks County*), *Bristol Township Water Authority v. Lower Bucks County Joint Municipal Authority*, 567 A.2d 1110 (Pa. Cmwlth. 1989) (*Bristol Township*), and *Northampton, Bucks County, Municipal Authority v. Bucks County Water and Sewer Authority*, 508 A.2d 605 (Pa. Cmwlth. 1986) (*Northampton*), the Authority contends that the trial court erred in holding that the Act does not prohibit competition between two municipal authorities.

In *Northampton*, the Northampton, Bucks County, Municipal Authority (Northampton) filed a complaint against Bucks County Water and Sewer Authority (Bucks) seeking to invalidate a water supply contract between Bucks and the Newtown Artesian Water Company (Newtown Artesian). The chancellor denied the requested relief. On appeal, this Court affirmed. The applicability of the non-competition clause of the Act was not raised. Rather, we rejected the argument that construction of water main extensions necessary to implement the proposed agreement would violate the Act's non-competition clause based on the facts of the case, explaining:

---

[9] Our review of a trial court's order sustaining preliminary objections and dismissing a complaint is limited to determining whether the trial court abused its discretion or committed an error of law. *Petty v. Hospital Service Association of Northeastern Pennsylvania*, 967 A.2d 439, 443 n.7 (Pa. Cmwlth. 2009). In reviewing preliminary objections, we consider as true "all well pleaded relevant and material facts." *Id.* However, "the court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *Penn Title Insurance Company v. Deshler*, 661 A.2d 481, 483 (Pa. Cmwlth. 1995). "A demurrer will not be sustained unless the face of the complaint shows that the law will not permit recovery, and any doubts should be resolved against sustaining the demurrer." *Id.* Reviewing preliminary objections involves a question of law to which our standard of review is *de novo* and our scope of review is plenary. *Petty*, 967 A.2d at 443 n.7.

> Appellants fail to recognize that the plain wording of the statute is such that it prohibits projects which "*shall* duplicate . . . *existing* enterprises *serving* substantially the same purposes." This clause of the statute is phrased in the present tense, it is not worded in such a manner that what Northampton could *possibly* do is in any way relevant. It is undisputed that Northampton is not currently providing through its facilities any kind of service that serves substantially the same purpose that the planned water main extensions would.

508 A.2d at 615 (emphasis in original).

We relied on our decision in *Northampton* in *Bristol Township.* In that case, the Lower Bucks County Joint Municipal Authority (Lower Bucks) filed a complaint seeking to enjoin Bristol Township Water Authority (BTWA) from interfering with or duplicating water service in three areas already serviced by Lower Bucks. After a hearing, the common pleas court enjoined BTWA from extending its water service into the disputed areas. On appeal to this Court, BTWA asserted, *inter alia*, that the chancellor erred in determining that the non-competition clause in the Act applied to Lower Bucks and BTWA, both municipal authorities. We rejected that argument, noting that in *Northampton* this Court applied the non-competition provision to two municipal authorities. *Bristol Township*, 567 A.2d at 1113.

In *Lower Bucks County*, we referenced those prior decisions and stated:

> The next issue decided by our Court in *Bristol Township* was whether [the Act's] non[-]competition clause applies as between two public entities. We rejected the notion that the term "competing enterprises" applies only to for-profit businesses and *held that municipal authorities are within the meaning of that term*. In doing so we relied upon [*Northampton*], wherein we applied [Section 4A(b)(2) of the Municipality Authorities Act of 1945,

*formerly* 53 P.S. §306A(b)(2),[10]] to two municipal authorities.

586 A.2d at 515 (emphasis added). In light of this Court's precedent, the trial court erred in holding that the Act does not apply to municipal authorities. *Lower Bucks County*; *Bristol Township*; *Northampton*.

However, we conclude that our holding in *Beaver Falls* compels us to reject the Authority's remaining assertion, that the amended complaint states a claim against MAWC for a violation of Section 5607(b)(2) of the Act arising from MAWC's agreement to furnish water to PAWC for service within the Uniontown District.

In *Beaver Falls,* the Beaver Falls Municipal Authority (Beaver Falls Authority) entered into a contract to supply bulk water to the Municipal Authority of the Borough of Conway (Conway Authority). After the expiration of the parties' 10-year contract in 1989, they continued to do business on a year-to-year basis. In 1993, Conway Authority entered into an agreement with Ambridge Authority for the purchase of water. In order to implement the agreement, an interconnection between Conway Authority and Ambridge Authority would have to be constructed, requiring capital expenditures by both parties. Conway Authority then gave Beaver Falls Authority notice of its intent to terminate the contract between them.

Beaver Falls Authority filed a complaint seeking to enjoin the two authorities from implementing their agreement, asserting that the Act precluded Ambridge Authority from competing with it to supply water to Conway Authority. Conway Authority and Ambridge Authority responded that the non-competition

---

[10] The language of former Section 4A(b)(2) is virtually identical to Section 5607(b) of the Act.

9

clause did not apply because Conway Borough was not within the service area of Beaver Falls Authority as described in its enabling legislation. Relying on *Lower Bucks County*, the court of common pleas agreed,[11] and this Court affirmed on appeal. We explained:

> Beaver Falls, Conway Authority and Ambridge Authority are each municipal authorities organized pursuant to the [Municipality Authorities Act of 1945]. Section 2(d) of the [Municipality Authorities Act of 1945, *formerly* 53 P.S. §302(d)], defines a municipal authority as "the body or board authorized by law to enact ordinances or adopt resolutions *for the particular municipality*." (Emphasis added.) The power and authority of a municipal authority is limited to that granted it by its enabling legislation. *In Re Acquisition of Water System in White Oak Borough*, [93 A.2d 437, 438 (Pa. 1953)]; *Fisher v. Southeastern Pennsylvania Transportation Authority*, [431 A.2d 394, 397 (Pa. Cmwlth. 1981)].
>
> Where a municipal authority provides service to an area identified by its enabling legislation as the territory which the authority was created to serve, the authority's right to provide that service is entitled to protection from competition under [former] Section 4A(b)(2) of the [Municipality Authorities Act of 1945]. [*Lower Bucks County*]. In *Bristol Township*,[12] the right to furnish

---

[11] In *Lower Bucks County*, we held that where water is supplied by an authority *in compliance with its enabling legislation*, that right to furnish would be protected by the Municipality Authorities Act of 1945. The common pleas court found that Beaver Falls Authority's service area was defined by its enabling legislation as the City of Beaver Falls, and the court reasoned that the legislature did not intend an authority to expand its service area merely by entering into a contract with another authority or municipality. The common pleas court concluded that the only rights Beaver Falls Authority had ever acquired to provide water to Conway Authority were derived from the contract between those parties and that those contractual rights were not entitled to protection under the Municipality Authorities Act of 1945.

**(Footnote continued on next page…)**

10

water which was afforded protection under the [Municipality Authorities Act of 1945] was a right specifically acquired by Lower Bucks Authority under the provisions of its enabling legislation. Thus, the concept of "service area" is relevant to our analysis, even though those words are not included in [former] Section 4A(b)(2) of the [Municipality Authorities Act of 1945].

As stated previously, Beaver Falls' enabling legislation authorizes it specifically to service the City of Beaver Falls and does not specifically authorize it to service Conway Authority or Conway Borough. In this case, the sole source of Beaver Falls' authority to sell water to Conway Authority is [former] Section 4B(p) of the [Municipality Authorities Act of 1945, *formerly* 53 P.S. §304(B)(p)], which empowers Beaver Falls *to acquire those rights and duties as it may desire by way of contract*. As observed by the [court of common pleas], if Beaver Falls is entitled to protection from competition merely by acquiring a contractual right to supply water to Conway Authority, then any authority would be able to expand its service area merely by entering into such a contract with other municipalities or authorities. We do not believe that the legislature intended such a result.

Rather, where the authority to sell water to entities outside a municipal authority's service area stems from [former] Section 4B(p) of the [Municipality Authorities Act of 1945], the terms for the sale of water are to be fixed by contract, and the rights and duties of the parties are limited to those set forth in the contract.

*Beaver Falls*, 689 A.2d at 382-83 (emphasis in original).

The Authority asserts that *Beaver Falls* is distinguishable from this matter because the Authority's amended complaint alleges that its service to

---

**(continued…)**

[12] *Bristol Township Water Authority v. Lower Bucks County Joint Municipal Authority*, 567 A.2d 1110 (Pa. Cmwlth. 1989).

PAWC for redistribution within the Uniontown District is "*not inconsistent with*" the authority granted by its enabling legislation. R.R. at 5 (emphasis added); Authority's brief at 16. However, in *Beaver Falls*, this Court held that protection from competition under the non-competition provisions of the Municipality Authorities Act of 1945 was afforded to the service area *specifically identified* by an authority's enabling legislation. The Authority does not claim that the ordinance adopted by the Borough authorizing the creation of the Authority specifically includes the Uniontown District in the Authority's service area. Because the Authority is entitled to protection from competition only within its service area pursuant to its enabling legislation, this matter is governed by the parties' agreement, and the Authority cannot rely on the non-competition provisions of the Act. *Beaver Falls*, 689 A.2d at 382-83.

## Conclusion

Pursuant to our decisions in *Bristol Township* and *Lower Bucks County,* the non-competition provision in Section 5607(b) applies to municipal authorities, and the trial court erred in concluding otherwise. Nevertheless, because the Act's protection extends only to the service area identified by an authority's enabling legislation, the trial court correctly concluded that the amended complaint failed to allege facts demonstrating that the Authority is entitled to protection from competition under the Act. *Beaver Falls*. Furthermore, where the Authority notified PAWC that it intended not to renew the contract and the parties were unable to reach a subsequent agreement, there was no "*existing* enterprise *serving* substantially the same purposes," and the Act would not bar the Westmoreland Agreement per our analysis in *Northampton*.

12

The underlying facts are not disputed, and the Authority does not suggest there are additional facts to support its claim. Consequently, the trial court did not err in dismissing the amended complaint with prejudice.

Accordingly, we affirm.

                                                                _____

MICHAEL H. WOJCIK, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| North Fayette County<br>Municipal Authority, | : | |
| | : | |
| | : | |
| Appellant | : | |
| | : | No. 1327 C.D. 2018 |
| v. | : | |
| | : | |
| Municipal Authority of | : | |
| Westmoreland County, and | : | |
| Pennsylvania American Water | : | |
| Company | : | |

O R D E R


AND NOW, this 6<u>th</u> day of <u>January</u>, 2020, the order of the Court of Common Pleas of Fayette County, dated September 7, 2018, is AFFIRMED.


_____
MICHAEL H. WOJCIK, Judge