586 A.2d 512

**LOWER BUCKS COUNTY JOINT MUNICIPAL AUTHORITY**

v.

**BRISTOL TOWNSHIP WATER AUTHORITY and Bristol Township (Two Cases).**

**Appeal of BRISTOL TOWNSHIP, Appellant.**

**Appeal of BRISTOL TOWNSHIP WATER AUTHORITY, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 1990.

Decided Jan. 29, 1991.

416

Donald B. McCoy, McCoy and Auchinleck, P.C., Sol. for Bristol Tp. Water Authority, with him, Clyde Waite, Sol. for Bristol Tp. Newtown, for appellants.

Miriam Reimel, Sirott & Reimel, Bristol, for appellee.

Before DOYLE and PALLADINO, JJ., and BARBIERI, Senior Judge.

DOYLE, Judge.

These are consolidated appeals by the Bristol Township Water Authority (BTWA) and Bristol Township from an order of the Court of Common Pleas of Bucks County which granted a motion for summary judgment filed by Lower Bucks County Joint Municipal Authority (Lower Bucks) and

directed Bristol Township and BTWA[1] to cease and desist in providing water service to customers within Keystone Park and Newportville–Fergusonville and enjoined them from interfering with Lower Bucks' right to provide water service to those areas. For purposes of simplicity we refer to these areas collectively as the Keystone area.

This litigation has a long history and its odyssey has been, unfortunately, fraught with considerable enmity. We shall endeavor to set forth in summary form the salient facts in a neutral fashion. In 1972 and 1974 there were subdivision agreements entered into between Bristol Township and a private entity known as Bristol Park concerning Bristol Park's plans for an industrial development in Bristol Township. This development was known by the fictional name Keystone Park. The agreements contained a provision that Bristol Park was "[t]o construct, lay out and install a water supply system in accordance with the legal requirements and conditions of [Lower Bucks] and to enter into an agreement for the transfer of said system to [Lower Bucks]." The subdivision plans were approved and filed and the filed plans indicated that Keystone Park would be served by Lower Bucks.

Even prior to the agreements, on August 9, 1971, Lower Bucks, by letter, issued Bristol Park a permit for construction of a water service system to Keystone Park.[2] The letter pertinently provided:

9. That the title of all rights-of-ways and properties above described be transferred to the Lower Bucks County Joint Municipal Authority for $1.00 each and that the said transfers be duly filed and recorded as required by law.

1. Bristol Township and BTWA argue on appeal that because the trial court used the singular term "defendant" it meant to enjoin only one of the two entities and which one is unclear. This argument is completely without merit. The use of the singular noun is obviously nothing more than a clerical error.

2. We find it odd that the permit was issued in 1971 while the agreements were not entered into until 1972 and 1974. The trial court so found, however, and our review of the record discloses that the dates stated are borne out by the record.

10. That the title of all water lines and appurtenances and water supply facilities such as interconnections, storage tank and booster pumping stations, etc., all as covered by the plans and specifications above referred to, be transferred to the Lower Bucks County Joint Municipal Authority for $1.00 each and that said transfer be duly filed and recorded as required by law.

This permit letter was never signed[3] but a building permit was nonetheless issued by Bristol Township. Upon completion of the water system, Lower Bucks began providing water to Keystone Park. It did not provide maintenance or repair of the pumping station, storage tank or water lines. It did, *inter alia,* provide water, read meters, analyze water, flush mains and issue permits for customer connections.

In 1972 Lower Bucks conducted a feasibility study in order to assess its ability to extend the water service from the water lines in Keystone Park to the Newportville–Fergusonville area. Subsequently, the Township designated this area as a water district to be served by Lower Bucks and Lower Bucks began service there in 1982 pursuant to a "deed of easement."

It is also worthy of note that on various occasions Bristol Park offered to dedicate its water system to Lower Bucks; Lower Bucks refused a 1972 offer which was for the pumping station and water storage tank (Bristol Park wanted a payment of $120,000 to $400,000 for the transfer) as well as various later offers by Keystone's successor, Pitcairn[4] to dedicate unconditionally the entire Keystone Park internal water system. Meanwhile, via another deed of easement, Bristol Township and Lower Bucks were both

---

3. The letter contains a space for the signature of Bristol Township's agent. The agent's signature does not appear therein.

4. The trial court in its adjudication in the *Keystone* case, see *infra* Op. p. 514, refers to Bristol Park as conducting various legal affairs after the date it found that Pitcairn had assumed management. Since, for our purposes, it is legally irrelevant which group was owner at any particular point in the ongoing negotiations, we merely recite the facts as found.

given jointly the right to use a utility easement to extend the Keystone Park lines into the Newportville–Fergusonville area. The Township constructed these lines but they were never dedicated to Lower Bucks.

In August of 1986, Bristol Township's governing body founded a new entity, BTWA. On August 20, 1986, Bristol Township, by resolution, accepted an offer of dedication of the water distribution system of the Keystone Park area from the Mutual Benefit Life Insurance Company another successor-owner of Keystone Park. On August 26, 1986, "Bristol Park" [5] conveyed the system to Bristol Township. Bristol Township then conveyed it to BTWA. BTWA then constructed a water main which if used would result in the termination of Lower Bucks' service to the Keystone area. Lower Bucks brought suit to enjoin its operation and the common pleas court held, in a final decree entered July 2, 1987, that BTWA owned the lines in the Keystone Park water system. On appeal from that final decree to this Court, we affirmed the common pleas court's order. *See Lower Bucks County Joint Municipal Authority v. Bristol Township Water Authority*, (No. 1677 C.D.1987, filed January 12, 1988) (*aff'g Lower Bucks County Joint Municipal Authority v. Bristol Township Water Authority*, 52 Bucks 151 (1987)). (*Keystone* case). What *Keystone* held was that BTWA owned the water system for the *Keystone* area. After the trial court decided the ownership question in Keystone, BTWA began supplying water to the Keystone area. This further activity forms the basis for the instant suit.

Prior to discussing the instant case, however, we shall briefly summarize the third lawsuit (second in sequence of time) involving these parties. It began in 1987 when Lower Bucks filed a complaint in equity in the common pleas court seeking to enjoin BTWA under Section 4 A(b)(2) of the Municipality Authorities Act of 1945 (Act), Act of May 2, 1945, P.L. 382, *as amended*, 53 P.S. § 306 A(b)(2), from

5. We think the chancellor here probably meant a successor owner of Keystone Park.

interfering with or duplicating water service in an area different from that involved in the *Keystone* case. Section 4 A(b)(2) pertinently states:

The purpose and intent of this act being to benefit the people of the Commonwealth by, among other things, increasing their commerce, health, safety and prosperity, and not to unnecessarily burden or interfere with existing business by the establishment of competitive enterprises, none of the powers granted by this act shall be exercised in the construction, financing, improvement, maintenance, extension or operation of any project or projects which in whole or in part shall duplicate or compete with existing enterprises serving substantially the same purposes....

The service areas subject to dispute in that litigation were the Keystone Garden Apartments, a shopping center known as Bristol Plaza and a housing division known as Tangle-wood. For purposes of simplicity, we shall designate this disputed area as the Tanglewood area and the litigation as the *Tanglewood* litigation.

In the *Tanglewood* litigation, the chancellor found that BTWA's solicitor had solicited the Keystone Apartments' water business and that Bristol Township Council had mandated that as a condition for final approval of the shopping center at Bristol Plaza the owner or users must purchase water from BTWA. Lower Bucks, however, had been serving the water needs of this area for over twenty-five years without any customer complaint being filed under the Act. Lower Bucks had maintained the lines in the Tanglewood area, cleaned and repaired them, and kept the lines in operating condition. Subsequent to the hearing, the chancellor permanently enjoined BTWA from extending its service into the Tanglewood area.

In the *Tanglewood* litigation, the parties stipulated, *inter alia*, that Lower Bucks had serviced Keystone Gardens and Bristol Plaza for twenty-five years and the Tanglewood area since its inception. Further, the trial court found, *inter alia*, that Lower Bucks' service area was defined by its enabling ordinance. That ordinance stated that Lower

Bucks could provide water "in the Township of Bristol and the Borough of Tullytown or parts thereof and for such other territory as it may be authorized to serve." The trial court also found that the water supply for the Tanglewood area comes from a different direction and a different source than the water supply for the Keystone area and that while in the *Keystone* case it was clear that Keystone Industrial Development had constructed the water system and Lower Bucks had refused to accept an offer of dedication of it, there was no evidence presented in the *Tanglewood* litigation as to who had paid for the construction of the water system in the Tanglewood area. There was, however, evidence that Lower Bucks had maintained the system. The trial court determined that BTWA must be enjoined from extending its service into the Tanglewood area. *Lower Bucks County Joint Municipal Authority v. Bristol Township Water Authority*, 54 Bucks 296 (1988) (*Tanglewood* case). BTWA appealed. On appeal seven issues were raised before this Court and decided by us in *Bristol Township Water Authority v. Lower Bucks County Joint Municipal Authority*, 130 Pa.Commonwealth Ct. 240, 567 A.2d 1110 (1989) (*Bristol Township*). Three of those issues are relevant to the instant litigation.

First, we held that relief may be granted pursuant to Section 4 A(b)(2) of the Act and a competitor (BTWA) may be enjoined from furnishing water to a service area even where there is no evidence of record that the entity which actually services the area (Lower Bucks) owns the lines. We specifically observed that nothing in the Act requires an authority to *own* the water lines in order for the Act to apply.

Thus, the issue in *Tanglewood* and *Bristol Township* was different from that in *Keystone*. The *Keystone* issue concerned the question of who owned the lines in the Keystone area. The issue in *Tanglewood* and *Bristol Township* concerned the question of who was entitled to service the Tanglewood area.

The next issue decided by our Court in *Bristol Township* was whether Section 4 A(b)(2)'s noncompetition clause applies as between two public entities. We rejected the notion that the term "competing enterprises" applies only to for-profit businesses and held that municipal authorities are within the meaning of that term. In doing so we relied upon *Northampton, Bucks County, Municipal Authority v. Bucks County Water and Sewer Authority*, 96 Pa.Commonwealth Ct. 514, 508 A.2d 605 (1986), *petition for allowance of appeal denied*, 514 Pa. 633, 522 A.2d 560 (1987), wherein we applied Section 4 A(b)(2) to two municipal authorities.

The final issue determined in *Bristol Township* which is relevant here is that once an authority has been incorporated under the Act it becomes an independent Commonwealth agency not subject to the control of the incorporating municipality and the municipality no longer has control over the authority's operations of its water system. Thus, we held in *Bristol Township* that Bristol Township had no right to determine who would provide water service within the Township.

With this lengthy history in mind, we now turn to an examination of the instant case. The area in dispute here is that which was the subject of the *Keystone* litigation. The issue, however, is not ownership of the water lines, but service rights. Lower Bucks sued to enjoin Bristol Township and BTWA from providing water service to the Keystone area. As previously noted, ownership of the water system has been held to be with BTWA and, once that determination had been made by the trial court, in March of 1987, BTWA began providing water to the Keystone area. As we observed in *Bristol Township*, ownership is not dispositive of service rights where a non-owning entity has actually been furnishing water to the area in question. It is, however, certainly an indicia of such rights. The order of the trial court now under review held that Section 4 A(b)(2) of the Act prohibited Bristol Township and Bristol Township Water Authority from establishing service

to the Keystone area. In so holding, it reasoned that BTWA's furnishing of water in the Keystone area constituted "existing enterprises" which competed with those of Lower Bucks. We agree.

As *Bristol Township* makes clear, ownership of a water system is not in and of itself dispositive of the right to furnish water. And where, as here, water was actually being supplied by an entity in compliance with its enabling legislation that separate right to furnish will be protected by the Act. *Id.* Here both parties admit in their pleadings that Lower Bucks had been serving water to the area in question, and that BTWA began to serve the area after the March 10, 1987 adjudication in the *Keystone* case was filed. Lower Bucks filed the instant case to enjoin that service only a few months later in August of 1987. Thus, the fact that BTWA owns the lines is not controlling because Lower Bucks service rights had already been established. In its attempt to "take over" the area, the furnishing of water constituted an act of competition as to Lower Bucks activities and is, thus, prohibited by the Act.

Much of Bristol Township's and BTWA's argument rests upon the premise that the Act cannot be used to enjoin the actions of the Township and that because Bristol Township is "the actor, the decision maker, the real owner and operator of the water system at issue" and BTWA is merely Bristol Township's "captive agent" neither Bristol Township nor BTWA can be enjoined. Joint Brief at p. 10. As we explicitly held in *Bristol Township*, however, once created, BTWA became an independent Commonwealth agency not subject to Township control and since BTWA is an independent agency it alone must decide where it will furnish water.

Equally without merit is BTWA's contention that it is not an "enterprise" within the intendment of Section 4 A(b)(2). *Bristol Township* disposed of this notion and we held that public authorities are enterprises within the Act.

Finally, BTWA contends that because Lower Bucks does not own or maintain the water system in the Keystone Area

it has no right to raise a Section 4 A(b)(2) "competition" argument. Again, *Bristol Township* holds to the contrary when it clearly explains that ownership is not a requisite to the right to furnish water. While it is an unusual situation for BTWA to own the lines and Lower Bucks, a potential competitor, to furnish the water through those lines, the Act does not preclude such result.[6]

Accordingly, based upon the foregoing discussion, we affirm.[7]

## ORDER

NOW, January 29, 1991, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is hereby affirmed.

6. We express our disapproval of Bristol Township and BTWA for their failure to indicate in their brief that the *Tanglewood* case had been affirmed by us in *Bristol Township.* We note that *Bristol Township* is controlling authority as to most of the issues it raised and counsel in that litigation is counsel of record in this case as well.

7. BTWA and Bristol Township maintain that genuine issues of material fact exist which should have prevented the trial court from entering summary judgment. *See* Pa.R.C.P. No. 1035(b). No such facts are indicated in the brief, nor does our review of the record disclose the existence of such facts. We, thus, reject this contention. Inasmuch as summary judgment may be entered where the moving party is entitled to judgment as a matter of law, *id.,* the trial court's action was proper.