**BEAVER FALLS MUNICIPAL AUTHORITY, a public municipal authority, Appellant**

v.

**MUNICIPAL AUTHORITY OF THE BOROUGH OF CONWAY, a public municipal authority, Borough of Conway, a municipality, and Ambridge Water Authority, a public municipal authority.**

Commonwealth Court of Pennsylvania.

Argued Nov. 22, 1996.
Decided Feb. 20, 1997.

**380**

Michael D. Klein, Harrisburg, for appellant.

H. Bruce Curry, Bridgewater, for appellee, Borough of Conway.

Bonnie Brimmeier, Pittsburgh, for appellee, Ambridge Water Authority.

Before McGINLEY and PELLEGRINI, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Beaver Falls Municipal Authority (Beaver Falls) appeals from the order of the Court of Common Pleas of Beaver County (trial court) which dismissed Beaver Falls' motion for post-trial relief and finalized a decree nisi entered on February 21, 1996. We affirm.

Beaver Falls is a municipal authority which was incorporated in 1945 by resolution of the City of Beaver Falls to exercise the powers granted it by the Municipality Authorities Act (Act)[1] in and for the City of Beaver Falls. Beaver Falls owns, operates and maintains two water treatment plants as well as a water distribution system which extends to the northern border of the Borough of Conway (Conway Borough). Conway Borough is not within the service area of Beaver Falls as described in Beaver Falls' enabling legislation.

The Municipal Authority of the Borough of Conway (Conway Authority) owns a water distribution system and related facilities within Conway Borough, which Conway Authority leases to Conway Borough. Conway Borough performs all maintenance on the system and facilities, administers the distribution of water to customers and bills and collects charges from customers.

Since 1959, Beaver Falls has been the exclusive supplier of bulk water to Conway Authority pursuant to a contract.[2] The water is supplied through an interconnection

---

1. Act of May 2, 1945, P.L. 382, *as amended*, 53 P.S. §§ 301–322.

2. Section 4B(p) of the Act, 53 P.S. § 306B(p), grants every authority the power to enter into contracts to supply water and other services to municipalities that are not members of the authority, or to the Commonwealth of Pennsylvania, municipalities, school districts, persons or authorities, and fix the amount to be paid therefor.

between the two authorities' systems. The interconnection was constructed in 1955 and was replaced and renewed in 1970; these projects were paid for from the general operating funds of Beaver Falls which has also constructed other facilities, at its own expense, to provide water to Conway Authority.

The most recent contract between Beaver Falls and Conway Authority was dated January 18, 1979 and was for a term of ten years, subject to termination by either party upon one year's notice. After 1989, Beaver Falls and Conway Authority continued to do business on a year-to-year basis. On November 9, 1993, Conway Authority entered into an agreement with the Ambridge Water Authority (Ambridge Authority) to purchase water from Ambridge Authority. In order to implement the agreement, an interconnection between Conway Authority and Ambridge Authority would have to be constructed, requiring capital expenditures by both parties.

On November 11, 1993, Conway Authority gave Beaver Falls notice of its intent to terminate the contract between them. On January 24, 1994, Beaver Falls instituted this litigation and, in its second amended complaint, sought to enjoin Conway Authority and Ambridge Authority from implementing their agreement, contending that the provisions of Section 4A(b)(2) of Act, 53 P.S. § 306A(b)(2), preclude Ambridge Authority from competing with it to supply water to Conway Authority.

Section 4A(b)(2) states as follows:

The purpose and intent of this act being to benefit the people of the Commonwealth by, among other things, increasing their commerce, health, safety and prosperity, and not to unnecessarily burden or interfere with existing business by the establishment of competitive enterprises, none of the powers granted by this act shall be exercised in the construction, financing, improvement, maintenance, extension or operation of any project or projects or provide financing for insurance reserves which in whole or in part shall duplicate or compete with existing enterprises serving substantially the same purposes.

53 P.S. § 306A(b)(2).

Conway Authority and Ambridge Authority argued that this non-competition clause does not apply because Conway Borough is not within the service area of Beaver Falls. Beaver Falls maintained that the scope of the clause is not restricted to disputes regarding its service area, but applies wherever it has existing customers. Following a hearing, the trial court entered an opinion and decree nisi denying Beaver Falls' request for an injunction.[3] On April 17, 1996, the trial court denied Beaver Falls' motion for post-trial relief and finalized the decree nisi.

▮ The trial court relied on *Lower Bucks County Joint Municipal Authority v. Bristol Township Water Authority,* 137 Pa.Cmwlth. 415, 586 A.2d 512 (1991)(*Lower Bucks*), wherein the court held that where water is supplied by an authority in compliance with its enabling legislation, that right to furnish will be protected by the Act. The trial court found that Beaver Falls' service area was defined in its enabling legislation as the City of Beaver Falls and reasoned that the legislature did not intend an authority to expand its service area merely by entering into a contract with another authority or municipality. The trial court thus concluded that the only rights Beaver Falls had ever acquired to provide water to Conway Authority were derived from the contract between those parties and were not entitled to protection under the Act.[4]

▮ On appeal to this Court, Beaver Falls argues that the trial court erred in limiting the protection of the non-competition clause

3. The second amended complaint sought other relief as well. However, at a pre-trial conference, counsel for all parties agreed that Beaver Falls' ability to succeed on all counts of its complaint is dependent upon whether or not Beaver Falls has acquired a right, exclusive of Ambridge Authority, to sell water to Conway Authority. Counsel agreed to bifurcate the case in order to decide this issue first.

4. In addition, the trial court interpreted the language of Section 4A(b)(2) as prohibiting the creation of municipal authorities to compete with existing enterprises. We agree with Beaver Falls that the Act prohibits the establishment of duplicative or competitive *projects,* rather than municipal authorities.

to a municipality's stated service area. Beaver Falls asserts that the case relied upon by the trial court, *Lower Bucks*, merely summarized the court's holding in *Bristol Township Water Authority v. Lower Bucks County Joint Municipal Authority*, 130 Pa.Cmwlth. 240, 567 A.2d 1110 (1989)(*Bristol Township*), an earlier case involving the same parties. Beaver Falls argues that, in fact, the *Bristol Township* court upheld the right of Lower Bucks County Joint Municipal Authority (Lower Bucks Authority) to sell water to territory *outside* of the service area established by its enabling legislation.

In *Bristol Township*, Lower Bucks Authority expanded its water service, pursuant to a deed of easement, into the disputed areas and operated and maintained the water lines in those areas for over 25 years. When Bristol Township Water Authority (BTWA) sought to provide service to those areas, Lower Bucks Authority filed a complaint in equity asserting that BTWA would violate Section 4A(b)(2) of the Act by duplicating the water service already provided by Lower Bucks Authority.

The *Bristol Township* court observed that Lower Bucks Authority was incorporated in 1952 by ordinances of Bristol Township and Tullytown Borough, which specified that the authority was created to serve those municipalities as well as "such other territory as it may be authorized to serve." *Id.* at 1114 (citation omitted). After concluding that Lower Bucks Authority was entitled to invoke the protection of the Act, the *Bristol Township* court affirmed the trial court's conclusion that BTWA's attempt to provide water service to the areas already served by Lower Bucks Authority constituted a violation of Section 4A(b)(2).

Beaver Falls misinterprets this decision as granting an authority protection from competition within territory outside of the authority's defined service area. As previously noted, Lower Bucks Authority's enabling legislation specifically authorized that authority to expand its service into "such other territory as it may be authorized to serve," *Id.* at 1114, and the disputed territory became integrated into Lower Bucks Authority's service area by authority of an easement. *Id.* Thus, the *Lower Bucks* court accurately summarized the holding in *Bristol Township*, and the trial court's reliance on *Lower Bucks* was proper.

Beaver Falls also asserts that its articles of incorporation authorize it to undertake any and all projects authorized by the Act, citing the following language:

> Said "Beaver Falls Municipal Authority" shall be formed under the "Municipalities Authorities Act of One Thousand Nine Hundred and Thirty–Five," approved June 28, 1935, P.L. 465 and its amendments and supplements, for the purpose of acquiring, owning and operating and leasing, any and all structures, facilities or undertakings which an Authority is authorized to construct, improve, maintain or operate under the provisions of said Act.

(Reproduced Record p. 68a.)

■ Beaver Falls asserts that, because Section 4B(p) of the Act, 53 P.S. § 306B(p), empowers it to enter into contracts to provide services to and for other municipalities, Beaver Falls' sale of water to Conway is a proper exercise of its powers and should be protected from competition. Beaver Falls also argues that the trial court erred in applying the concept of "service area" to this case, because that term is not included in Section 4A(b)(2) of the Act.[5]

■ Initially we note that Beaver Falls, Conway Authority and Ambridge Authority are each municipal authorities organized pursuant to the Act. Section 2(d) of the Act, 53

---

5. The phrase "service area" is contained in Section 4B(h) of the Act, 53 P.S. § 306B(h), which grants an authority the exclusive power to set rates for services provided within the authority's service area, with the limitation that the rates be reasonable and uniform. The limitation contained in Section 4B(h) does not apply where the authority contracts with another to provide the service. *Township of Raccoon v. Municipal Water Authority of the Borough of Aliquippa*, 142 Pa.Cmwlth. 508, 597 A.2d 757 (1991), *petition for allowance of appeal denied*, 530 Pa. 636, 606 A.2d 904 (1992); *Township of Aston v. Southwest Delaware County Municipal Authority*, 112 Pa. Cmwlth. 434, 535 A.2d 725 (1988), *petitions for allowance of appeal denied*, 521 Pa. 615, 557 A.2d 346 (1989).

P.S. § 302(d), defines a municipal authority as "the body or board authorized by law to enact ordinances or adopt resolutions *for the particular municipality.*" (Emphasis added.) The power and authority of a municipal authority is limited to that granted it by its enabling legislation. *In Re Acquisition of Water System in White Oak Borough,* 372 Pa. 424, 93 A.2d 437 (1953); *Fisher v. Southeastern Pennsylvania Transportation Authority,* 60 Pa.Cmwlth. 269, 431 A.2d 394 (1981).

█ Where a municipal authority provides service to an area identified by its enabling legislation as the territory which the authority was created to serve, the authority's right to provide that service is entitled to protection from competition under Section 4A(b)(2) of the Act. *Lower Bucks.* In *Bristol Township,* the right to furnish water which was afforded protection under the Act was a right specifically acquired by Lower Bucks Authority under the provisions of its enabling legislation. Thus, the concept of "service area" is relevant to our analysis, even though those words are not included in Section 4A(b)(2).

As stated previously, Beaver Falls' enabling legislation authorizes it specifically to service the City of Beaver Falls and does not specifically authorize it to service Conway Authority or Conway Borough. In this case, the sole source of Beaver Falls' authority to sell water to Conway Authority is Section 4B(p) of the Act, which empowers Beaver Falls *to acquire those rights and duties as it may desire by way of contract.* As observed by the trial court, if Beaver Falls is entitled to protection from competition merely by acquiring a contractual right to supply water to Conway Authority, then any authority would be able to expand its service area merely by entering into such a contract with other municipalities or authorities. We do not believe that the legislature intended such a result.

Rather, where the authority to sell water to entities outside a municipal authority's service area stems from Section 4B(p) of the Act, the terms for the sale of water are to be fixed by contract, and the rights and duties of the parties are limited to those set forth in the contract. *Raccoon; Aston.* In those cases, the court held that where the sale of water by one municipal authority to another was authorized by a contract between the parties, rate disputes between the parties were governed by Section 4B(p), rather than Section 4B(h) of the Act. Although *Raccoon* and *Aston* involved disputes over rates rather than competition, we believe that the underlying reasoning employed by the court in those cases is applicable here.

Accordingly, we hold that the proper exercise of the authority to contract for the sale of water by Ambridge Authority to Conway Authority does not violate Section 4A(b)(2) of the Act.

### ORDER

NOW, February 20, 1997, the order of the Court of Common Pleas of Beaver County in the above-captioned matter is hereby affirmed.