IN THE COMMONWEALTH COURT OF PENNSYLVANIA

East Dunkard Water Authority,      :
                 Appellant      :
                               :
        v.                    :     No. 116 C.D. 2020
                               :     Argued: October 13, 2020
Southwestern Pennsylvania      :
Water Authority                 :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON            FILED: November 16, 2020


         Before this Court is the appeal of the East Dunkard Water Authority (EDWA) from the order (Order) of the Greene County Court of Common Pleas (Trial Court), dated January 16, 2020, sustaining one of the preliminary objections (Preliminary Objections) filed by the Southwestern Pennsylvania Water Authority (SPWA) and dismissing EDWA's Complaint for Declaratory Judgment and Equitable Relief (Complaint).


## I.      Background

         On May 28, 2019, EDWA filed a Complaint seeking to enjoin SPWA from "1) continuing an expansion project; 2) running pipelines parallel to and/or close in proximity to [EDWA's] pipelines within [EDWA's] service territory; 3) providing water to Hatfield's Ferry power station; 4) providing water to an

anticipated industrial park; and 5) providing water to any of [EDWA's] existing customers or anyone in its territory." EDWA's Br. at 19; Reproduced Record (R.R.) at 10.[1] On June 26, 2019, SPWA filed Preliminary Objections. R.R. at 42. On July 15, 2019, EDWA filed a Response to SPWA's Preliminary Objections. R.R. at 55. After oral argument, the Trial Court, by Order dated January 16, 2020, granted SPWA's third Preliminary Objection and dismissed the Complaint.

SPWA's third Preliminary Objection was titled "Failure to State a Claim." The Trial Court's explanation of SPWA's objection and EDWA's opposition to it, as well as the Trial Court's determination, are captured in the narrative from the Trial Court's Order below.

> [SPWA] avers that if [EDWA], "claims it somehow obtained the distribution system of the East Dunkard Water Association [Association], a Public Utility pursuant to 66 Pa.C.S. §102[2] . . .[,] [EDWA] has failed to allege in the Complaint any such allegation to sustain [its] claims and have further failed to attach deeds therewith showing such a transfer." *See* [R.R. at 42-49]. [SPWA] further avers that if "[EDWA] believes it obtained the distribution system by contract and/or by deed from the Association; it would only be a valid contract if approved by the

---

[1] Pa.R.A.P. 2173 states, in pertinent part, as follows:

[e]xcept as provided in Rule 2174 (tables of contents and citations), the pages of briefs, the reproduced record and any supplemental reproduced record shall be numbered separately in Arabic figures and not in Roman numerals: thus 1, 2, 3, *etc.*, followed in the reproduced record by a small a, thus 1a, 2a, 3a, *etc.*, and followed in any supplemental reproduced record by a small b, thus 1b, 2b, 3b, *etc.*

We note that the reproduced record and supplemental reproduced record, herein, do not follow the rule as stated above.

[2] Public Utility Code, 66 Pa.C.S. §§101-3316.

2

[Public Utility Commission] (PUC). No such approval has been attached to the Complaint or even alleged in the Complaint." *Id*. [SPWA] seeks a dismissal of the Complaint.

[EDWA] avers in its response that the Association is not, by definition, a public utility as it is a cooperative association which furnishes services only to its stockholders or members on a nonprofit basis and that the Municipality Authorities Act[3] does not require PUC approval. [EDWA] seeks dismissal of [SPWA's] [third] Preliminary Objection.

[EDWA] avers that it maintains and operates the water distribution system throughout Dunkard and Greene Townships, and parts of Monongahela, Cumberland, Perry, and Whitely Townships, [EDWA] further avers that the Association is a cooperative association which furnishes services only to its stockholders or members on a nonprofit basis, and 66 [Pa. C.S.] §102 specifically excludes such an association from the definition of a Public Utility. However, no such averments are made of [EDWA]. Accordingly, given [EDWA's] status as an authority and its maintenance and operation of the water distribution system owned by a third party, the Association, PUC approval is required of the contract and/or deed from the Association.

AND NOW THEREFORE, [SPWA's] [third] Preliminary Objection titled FAILURE TO STATE A CLAIM is GRANTED.

R.R. at 114-16 (capitalization in original).

EDWA now appeals to this Court.[4]

---

[3] 53 Pa.C.S. §§5601-5623.

[4] This Court's scope of review on appeal from a trial court's order granting preliminary objections and dismissing a complaint is limited to determining whether the trial court committed legal error or abused its discretion. *Bell v. Township of Spring Brook*, 30 A.3d 554 (Pa. Cmwlth. 2011).

**(Footnote continued on next page…)**

## II. Arguments

## A. EDWA's Argument

At the outset, EDWA asserts that the Municipality Authorities Act (Act) prohibits municipal authorities from duplicating services or competing with existing enterprises. The Act states, in pertinent part:

> The purpose and intent of this chapter being to benefit the people of the Commonwealth by, among other things, increasing their commerce, health, safety and prosperity and not to unnecessarily burden or interfere with existing business by the establishment of competitive enterprises; **none of the powers granted by this chapter shall be exercised in the construction, financing, improvement, maintenance, extension or operation of any project or projects or providing financing for insurance reserves which in whole or in part shall duplicate or compete with existing enterprises serving substantially the same purposes**.

53 Pa.C.S. §5607(b)(2) (emphasis added).

---

[O]ur standard of review of an order of the trial court overruling or [sustaining] preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*P.J.A. v. H.C.N.*, 156 A.3d 284, 287 (Pa. Super. 2017).

EDWA maintains that it is a duly authorized authority. It services Dunkard and Greene Townships and parts of Monongahela, Cumberland, Perry, and Whiteley Townships. EDWA's Br. at 22; R.R. at 4. EDWA contends that SPWA is also an authority and that its proposed new facilities will be duplicative of existing facilities operated by EDWA. Thus, EDWA asserts it is entitled to the protections of the Act. 53 Pa.C.S. §5607(b)(2); R.R. at 4-8; *see also Dominion Prods. & Servs., Inc. v. Pittsburgh Water & Sewer Auth.*, 44 A.3d 697 (Pa. Cmwlth. 2011) (overruling preliminary objections where a municipal authority's proposed project would compete with existing enterprises).

EDWA states that SPWA, in its second Preliminary Objection, described EDWA's predecessor, the Association, as a private, non-profit corporation and made the legal conclusion that it is a public utility pursuant to 66 Pa.C.S. §102.[5] R.R. at 45. EDWA asserts that this assertion, in turn, formed the basis of SPWA's third Preliminary Objection, which EDWA characterizes as follows: "that if [EDWA] obtained the water distribution system by contract, such a contract would

---

[5] 66 Pa.C.S. §102 defines a "public utility," in pertinent part, as follows:

> (1) Any person or corporations now or hereafter owning or operating in this Commonwealth equipment or facilities for:
> ****
> (ii) Diverting, developing, pumping, impounding, distributing, or furnishing water to or for the public for compensation.
> ****
> (2) The term does not include:
> ****
> (ii) Any bona fide cooperative association which furnishes service only to its stockholders or members on a nonprofit basis.

not be valid since it was not approved by the PUC, and therefore [EDWA] is not afforded the protections of the Act because it is not the owner of the system . . . ." EDWA's Br. at 23; R.R. at 47.

However, EDWA argues that "this Court has unequivocally set forth that ownership is not a requirement for the Act to apply." EDWA's Br. at 23. Quoting *Bristol Township Water Authority v. Lower Bucks County Joint Municipal Authority*, 567 A.2d 1110, 1112 (Pa. Cmwlth. 1989), EDWA argues that this Court has concluded that "'nothing in the Act requires that the authority own the water lines in order for the Act to apply . . . . Clearly, the Act applies to authorities which maintain and operate water distribution systems as well as those authorities which own their own waterworks.'" EDWA's Br. at 24. In *Bristol Township Water Authority*, this Court specifically determined that "Lower Bucks has maintained and operated the water distribution system in the disputed area since 1961. This is sufficient to render the Act applicable." 567 A.2d at 1112. EDWA argues that, "[i]n this case, [it] has pled that it already services some of the areas in which [SPWA] intends to expand (R.R. [at] 4-8) . . . thus the Act should protect [EDWA] from competition where it is already providing services with existing facilities regardless of ownership of the lines." EDWA's Br. at 24.

Quoting *Lower Bucks County Joint Municipal Authority v. Bristol Township Water Authority*, 586 A.2d 512, 515-516 (Pa. Cmwlth. 1991), EDWA asserts that this Court determined that "ownership of a water system is not in and of itself dispositive of the right to furnish water. And where, as here, water was actually

6

being supplied by an entity in compliance with its enabling legislation that separate right to furnish will be protected by the Act." EDWA's Br. at 25.

EDWA states that "[n]otwithstanding that ownership is not a prerequisite to the protection of the Act, the Trial Court granted [SPWA's] [third] Preliminary Objection on the basis that any contract between [EDWA] and the Association requires PUC approval because 'no such averments are made that [EDWA]' is excluded from the definition of a public utility." EDWA's Br. at 25; R.R. at 115. EDWA argues, however, that

> this constitutes two errors of law: first, because ownership is not required for the Act to apply, whether any contract for ownership of the water system is enforceable is not relevant; and second, the Public Utility Code does not require PUC approval of a contract between a public utility (like [EDWA]) and a cooperative association (like the Association).

EDWA's Br. at 25-26.

EDWA states that the Trial Court recognized that the Association is a cooperative association. Thus, EDWA argues that the Association is not subject to the PUC's jurisdiction. "[B]ecause [it] only furnished services to its stockholders or members on a nonprofit basis[,] it is not a [p]ublic [u]tility." EDWA's Br. at 26 (citing R.R. at 115 and 66 Pa.C.S. §102). EDWA adds that Section 507 of the Public Utility Code, 66 Pa.C.S. §507, sets forth when a contract must be approved by the PUC, and states, in pertinent part, as follows: "[e]xcept for a contract between a public utility and a municipal corporation to furnish service at the regularly filed and published tariff rates, no contract or agreement between any public utility and any

7

municipal corporation shall be valid unless filed with the commission at least 30 days prior to its effective date . . . ." EDWA's Br. at 26. Further, EDWA notes that "[a] 'municipal corporation' is defined in the [Public Utility Code] as '[a]ll cities, boroughs, towns, townships, or counties of this Commonwealth, and also any public corporation, authority, or body whatsoever created or organized under any law of this Commonwealth for the purpose of rendering any service similar to that of a public utility.'" EDWA's Br. at 26 (quoting 66 Pa.C.S. §102).

Relying on *Philadelphia Association of Wholesale Opticians v. Pennsylvania Public Utility Commission*, 30 A.2d 712, 717 (Pa. Super. 1943) ("A[n] association that operates on behalf of its members exclusively is [a] cooperative.") and *Mellon v. Morea Citizens Water Company* (Pa.P.U.C., No. C-902997, filed May 20, 1991), 1991 WL 476351 (the PUC has no jurisdiction over a bona fide cooperative association), EDWA contends that "[s]ince the Association is neither a public utility nor a municipal corporation[,] Section 507 [of the Public Utility Code] does not require a contract between it and [EDWA] be approved by the PUC." EDWA's Br. at 26-27. Additionally, EDWA argues that, "[e]ven if a contract between [it] and the Association did require approval, it would not matter if it was unenforceable because ownership is not a requirement for protection under the Act." EDWA's Br. at 27.

Based on the preceding argument, EDWA asserts that SPWA's third Preliminary Objection should have been overruled, and that its Complaint should be reinstated for trial on the merits. *Id.*

## B. SPWA's Argument

SPWA provides the following useful historical background relative to the matter before us:

> On or about April 7, 1969, the [Trial Court] . . . approved . . . the formation of a private, non-stock corporation called the [Association] (*see* [Supplemental Record (S.R.) at] la[-5a]) to construct, maintain and operate a private water system for the supplying of water for domestic, livestock, garden, industrial and commercial purposes from the extraction of water from the Monongahela River for the association members on a non-profit basis (*see* S[.]R[.] [at] 3a). The Association was a corporate, private entity, an association . . . not [a] municipal authority. Over [time], the Association began to expand its pipeline distribution system beyond Dunkard Township, Greene County, and into small geographical portions of Monongahela Township, Greene County, and . . . into Cumberland Township, Greene County. Notably, the Association purchased the Bobtown Distribution System (including all real estate and equipment contained therein) from the Shannopin Water Company (a public utility) in November 1969 (*See* R[.]R[.] [at] 76).

SPWA's Br. at 1.

SPWA argues that the Association fits the description of a public utility pursuant to 66 Pa.C.S. §102, because it was involved in "[d]iverting, developing, pumping, impounding, distributing, or furnishing water to or for the public for compensation." SPWA's Br. at 1-2.

SPWA asserts that, in December 2010, "Dunkard Township created [EDWA] and enabled it to operate in Dunkard Township (*see* S.R. at 22a) and 'the area adjacent thereto and any other property which can be incorporated into said area for the purposes hereinafter set forth.'" SPWA's Br. at 2 (citing S.R. at 23a, ⁋7). Further, some, although not all, of the property and facilities for the water

distribution system owned by the Association were transferred to the Authority. SPWA's Br. at 2 (citing R.R. at 50, 80, 85, and 90).

SPWA states that EDWA pays rent to the Association and that EDWA is now the billing entity for the Association's former customers. SPWA's Br. at 3. SPWA asserts that none of the deeds in EDWA's reproduced record reflect any conveyance of the water pipes and other water delivery components from the Association to EDWA in Monongahela Township and that none contain any reference to PUC approval of the transactions between the Association and EDWA, which is required for any contract or conveyance between a municipal authority and a public utility in order to be valid. *Id.* SPWA further asserts that "[t]he only municipal authority that was enabled to operate in Monongahela Township, Greene County, on June 5, 2019, was the Dunkard Valley Joint Municipal Authority (DVJMA) that was created in conjunction with Monongahela Township and the Borough of Greensboro (R.R. at 25, 39), which is the authority acquired by SPWA. SPWA's Br. at 4 (citing R.R. at 4). Further, SPWA contends that it was invited to provide water to the residents of Monongahela Township by that township's supervisors on or about April 15, 2019, as a precursor to the acquisition of DVJMA (R.R. at 24). SPWA's Br. at 4. SPWA argues that "[EDWA] has never been invited by Monongahela Township to provide water to any resident of said township as Monongahela Township was never 'desiring service' from EDWA or its lessor, the Association." *Id.*

SPWA states that EDWA

references its "enabling legislation," passed by the Dunkard Township supervisors, as [a] guarantor of exclusive access to

10

> Monongahela Township and its citizens. [However,] [t]here is no "enabling legislation" of record, nor is there any filed in the Greene County Courthouse with the approved Dunkard Township ordinances. The Articles of Incorporation included in the Supplemental Record do not involve Monongahela Township as one of the municipalities that created [EDWA] even though it is the very township that [EDWA] seeks to exclude [SPWA] from selling water within. [EDWA's] Articles of Incorporation define the service area as Dunkard Township and "other areas desiring service."

SPWA's Br. at 7.

SPWA argues that "the supervisors of Dunkard Township do not have the ability to create a municipal authority and grant it binding and 'exclusive' access to areas outside of their jurisdiction. There is no special grant of authority to one municipality to create an authority binding another municipality." SPWA's Br. at 7 (citing 53 Pa.C.S. §5603).

> Prior to Dunkard Township creating its municipal authority, [EDWA], all that existed in Dunkard Township was a privately incorporated, nonprofit association created by various individuals, the . . . Association. It is the private contracts between the Association and its customers in Dunkard, Greene, Monongahela, Perry, Whitely and Cumberland Townships (*see* R[.]R[.] [at] 4; S[.]R[.] [at] 18a) that were in some manner leased or assigned to [EDWA] and that [EDWA] wishes to use to assert . . . exclusivity in a municipality (Monongahela Township) that previously never invited the [EDWA] to enter said township or borough. This original association, named the East Dunkard Water Association, *i.e.*, the Association, leased its pipes and delivery system to [EDWA]. From this lease agreement . . . [EDWA] is claiming the creation of "a(n exclusive) service area."

SPWA's Br. at 8-9 (citing S.R. at 18a).

11

Referencing 53 Pa.C.S. §5613(b)(1),[6] SPWA contends that, "as a municipal authority obtaining water works facilities, EDWA had a duty to notify the non-enabling municipalities of its acquisition of water systems." SPWA's Br. at 9.

Noting that a public utility and a municipal authority are distinct types of entities, SPWA asserts that EDWA, itself, acknowledges it is a public utility even while seeking protection under the Act. SPWA's Br. at 9 (citing EDWA's Br. at 25-26). Further, SPWA asserts that there is no proof of the enabling municipality, *i.e.*, Dunkard Township, approving the transfers from the Association to EDWA as required by 53 Pa.C.S. §5613(b)(1), or that Monongahela Township received notice of EDWA's acquisition of access to the Association's water distribution system. SPWA's Br. at 10.

SPWA acknowledges that a municipal authority has a right to exclusivity within its enabling jurisdiction and such other areas which it is legitimately operating under its service area designation or by invitation. SPWA explains that in *Beaver Falls Municipal Authority v. Municipal Authority of Borough of Conway,* 689 A.2d 379 (Pa. Cmwlth. 1997), the Beaver Falls authority was providing water to the Borough of Conway which sought to enter a new contract with another water authority to provide its water. However, in that case, this Court "made it clear that contracts outside the

---

[6] 53 Pa.C.S. §5613(b)(1) states, in pertinent part:

> An authority may not acquire by any device or means, including a consolidation, merger, purchase or lease . . . title to or possession or use of all or a substantial portion of any existing facilities constituting a project as defined under this chapter if the project is subject to the jurisdiction of the [PUC] without first reporting to and advising the municipality which created or which are members of the authority of the agreement to acquire, including all its terms and conditions.

12

service area for which the Beaver Falls Authority was created . . . were not guaranteed by the exclusivity provisions of 53 Pa.C.S. §5607(d)(9) but rather were subject to 53 Pa.C.S. §5607(d)(19)," which does not grant exclusive rights. SPWA's Br. at 11. In *Beaver Falls Municipal Authority*, we determined that the Ambridge Authority could supply water to the Borough of Conway under a new contract, and Beaver Falls could not block it. *Id.* SPWA asserts that, similarly, in the present matter, EDWA's provision of water to the Association's waterlines and distribution system does not give EDWA exclusivity outside of Dunkard Township. SPWA's Br. at 11. SPWA contends that the Trial Court "correctly pointed out that [EDWA] was acting as a public utility in its operation of a third-party water system outside of its enabling municipality." SPWA's Br. at 12-13 (citing R.R. at 115-16).

Further, SPWA argues that the Association is a private company that had been engaged in the distribution of water beyond just its members and shareholders, bringing it within the definition of a public utility, and PUC approval is required for any transfer of property or a contract to which a public utility is a party. SPWA's Br. at 13 (citing 66 Pa.C.S. §102). SPWA argues that "a contract with a third party, particularly a public utility corporation[,] is not covered by the protections of the [Act]. In this case, the contracts selling or leasing any property from the Association to the [EDWA] are unenforceable as they lack PUC approval and therefore are illegal." SPWA's Br. at 14.

SPWA maintains that EDWA's "entire action is premised upon the fact that it leases an Association's facilities in a township, that never invited either entity to provide water, and is now the township which is the location for SPWA's planned

13

expansion . . . by (1) invitation from Monongahela Township; and (2) acquisition of [DVJMA]." SPWA's Br. at 15. Further, "it was illegal for [EDWA] to begin to operate . . . any plant, equipment, or other facilities for the rendering or furnishing to the public of any public utility service beyond its corporate limits," and EDWA has "never alleged that it possesses a certificate of public convenience or that [the Association] possesses one." SPWA's Br. at 16 (citing 66 Pa.C.S. §1102(a)(5)). SPWA asserts that EDWA entered Monongahela Township illegally and, thus, cannot attempt to keep out other lawfully operating municipal authorities without first seeking and receiving PUC approval. SPWA's Br. at 16-17.

## III.    Discussion

Upon review, we first address the status of the EDWA and of the Association and the Trial Court's determination that any contract between the two entities required PUC approval.

There is no question that EDWA is a municipal corporation as defined in 66 Pa.C.S. §102. However, the section of the Public Utility Code that creates the requirement of PUC contract approval in the present matter is Section 507, which requires approval when there is a contract between a municipal corporation and a "public utility." *See* 66 Pa.C.S. §102 and §507. Although the Association does, or did, provide services that meet the definition of a public utility, per 66 Pa.C.S. §102, *i.e.*, "diverting, developing, pumping, impounding, distributing, or furnishing water to or for the public for compensation," the Association also meets the definition of an exception to same, as it was never established by the Trial Court that the Association was *not* a "bona fide cooperative association which furnishes service only to its

14

stockholders or members on a nonprofit basis." 66 Pa.C.S. §102. While the Association has expanded over the years, at no point did the Trial Court reject the notion that the Association is still just that, *i.e.*, an "association," per the definition in 66 Pa.C.S. §102, and, thus, exempt from the requirement of PUC contract approval in the present matter. The Trial Court asserts that "given [EDWA's] status as an authority and its maintenance and operation of the water distribution system owned by a third party, the Association, PUC approval is required of the contract and/or deed from the Association." R.R. 115-16. However, the plain language of Sections 102 and 507 of the Public Utility Code exempts a bona fide association from the definition of public utility, and there is no requirement for a municipal corporation to seek approval for a contract between it and an association.[7] Nonetheless, we concur with the Trial Court that SPWA's third Preliminary Objection was properly sustained, albeit for a different reason.[8]

While we diverge from the Trial Court's reasoning, we agree that EDWA failed to obtain the requisite PUC approval. The more persuasive argument in support of SPWA's position, and, hence, the Trial Court's determination sustaining SPWA's third Preliminary Objection and dismissing EDWA's Complaint, is that EDWA needed PUC approval to operate outside the bounds of Dunkard Township.

---

[7] We note, here, that we agree with EDWA's argument that the "ownership" of the water system is not required for EDWA to have exclusivity protections under the Act. However, this issue is not dispositive to the outcome in the current matter.

[8] *See Borden v. Baldwin*, 281 A.2d 892 (Pa. 1971) (appellate court may sustain preliminary objections but for different reasons than the lower court).

15

Although we recognize that, in and of itself, a municipal corporation is not included in the definition of public utility in the Public Utility Code,[9] once a municipal corporation wishes to provide utility services beyond its boundaries, it is treated as a public utility, subject to the jurisdiction of the PUC. Section 1102(a)(5) of the Public Utility Code, 66 Pa.C.S. §1102(a)(5), states, in pertinent part:

> [u]pon the application of any public utility **and the approval of such application by the commission, evidenced by its certificate of public convenience** first had and obtained, and upon compliance with existing laws, it shall be lawful: . . . . (5) [**f]or any municipal corporation to** acquire, construct, or **begin to operate**, any plant, equipment, or other facilities for the rendering or furnishing to the public of **any public utility service beyond its corporate limits**.

(Emphasis added.)

In addition, Section 1501 of the Public Utility Code, 66 Pa.C.S. §1501, states, in pertinent part: **"[a]ny public utility service being furnished or rendered by a municipal corporation beyond its corporate limits shall be subject to regulation and control** by the commission as to service and extensions, **with the same force and in like manner as if such service were rendered by a public utility."** (Emphasis added).

As this Court noted in *Borough of Ridgway v. Pennsylvania Public Utility Commission*, 480 A.2d 1253 (Pa. Cmwlth. 1984), a case in which a municipality was

---

[9] *See In re Condemnation of Springboro Area Water Auth.*, 898 A.2d 6 (Pa. Cmwlth. 2006), in which this Court stated: "we conclude that the [a]uthority is not a person because it is not an individual, partnership, or association other than a corporation. Further, the [a]uthority is not a corporation because the [Public Utility] Code specifically excludes 'municipal corporations,' a term that encompasses municipal authorities, from the definition of 'corporation.' Thus, utilizing the [Public Utility] Code's definition of public utility, we conclude that the [a]uthority is not a public utility." *Id.*, 898 A.2d at 11.

16

providing sewer service to the public beyond the municipality's boundaries: "the answer to the question of whether the [b]orough is subject to the jurisdiction of the PUC in this matter, inasmuch as it is controlled by the conclusion that the [b]orough is a direct provider of extraterritorial sewer service to the public, must be yes. Such being the case, a certificate of public convenience is necessary." Further in *In re Acquisition of Water System in White Oak Borough*, 93 A.2d 437, 439 (Pa. 1953), our Supreme Court stated: **"[t]he City** of McKeesport **in operating a water distribution system beyond its corporate limits is subject, as we have seen, to the jurisdiction of the [PUC]** and consequently this [a]uthority cannot acquire by any device or means whatsoever all or any part of the City's water [d]istribution system without first obtaining the approval of the [PUC]." (Emphasis added.) The same is true in the matter *sub judice*. EDWA, as a creature of Dunkard Township, cannot circumvent PUC approval by simply assuming the Association's private water distribution system and providing water service beyond Dunkard Township, where it has not demonstrated a right to do so via a certificate of public convenience.[10]

### IV.    Conclusion

Although we reach our result for a different reason, we affirm the Trial Court's order sustaining the SPWA's third Preliminary Objection and dismissing the Complaint filed by EDWA. Where the Trial Court sustained SPWA's third Preliminary Objection for failure to state a claim because EDWA and the Association did not seek

---

[10] During oral argument before this Court on October 13, 2020, the attorney for EDWA acknowledged that EDWA does not have a certificate of public convenience from the PUC, when he stated that EDWA is currently in the process of attempting to obtain one.

17

PUC approval of the contract between them and/or approval of the deed from the Association, we instead sustain SPWA's third Preliminary Objection due to EDWA's failure to produce evidence of the PUC's approval of its provision of public utility services beyond the boundaries of Dunkard Township.

_____
J. ANDREW CROMPTON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

East Dunkard Water Authority,      :
                   Appellant      :
                           :
           v.                :    No. 116 C.D. 2020
                           :
Southwestern Pennsylvania      :
Water Authority               :

## **O R D E R**

**AND NOW**, this 16th day of November 2020, the Order of the Greene County Court of Common Pleas sustaining the third Preliminary Objection of the Southwestern Pennsylvania Water Authority and dismissing the Complaint filed by the East Dunkard Water Authority is **AFFIRMED**.

 

_____
J. ANDREW CROMPTON, Judge